Unemployment Compensation Board of Review of The Commonwealth of Pennsylvania *v.* Patricia Shrump, Appellant.

Argued October 30, 1975, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Alex E. Echard,* with him *David G. Petonic,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, December 29, 1975:

This is an appeal by Patricia Shrump from an order of the Unemployment Compensation Board of Review, dated February 28, 1975, which denied benefits. In a per curiam order dated July 17, 1974, we remanded the matter to the Board for the purpose of reconsidering its prior decision and for the taking of additional testimony relative to whether Shrump was available for suitable work as required by Section 401 (d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §801 (d). The Board concluded, as it had in its original decision, that Shrump was not available for work during the claim weeks in question. We will affirm.

Shrump was discharged by Pittsburgh Reflector Company by letter dated June 19, 1972. The employer cited excessive absenteeism as the basis for the dismissal, and Shrump does not question the fact that during her period of employment her absenteeism was far in excess of what an employer could be expected to tolerate. This absenteeism was, however, understandable, inasmuch as Shrump has a history of menstrual problems which were at times so severe that she was prevented from even standing up.

The referee, who originally heard the case, awarded benefits after concluding that Shrump's medical problem precluded any finding of willful misconduct. The Board remanded the matter to the referee, and eventually reversed his determination of eligibility. In reversing, the Board agreed that no willful misconduct was present, but it found that Shrump's medical problem rendered her unavailable for work for the weeks in question. Shrump appealed to this Court, arguing, *inter alia,* that the question of availability had not been anticipated and that a fair hearing had not been granted because the Board *sua sponte* raised the question after the record had been closed. Upon motion by counsel for the Board, we remanded.

Our scope of review in cases of this kind is limited to questions of law and, absent fraud, to a determination of whether the Board's findings are supported by the evidence. *Dingel v. Unemployment Compensation Board of Review,* 14 Pa. Commonwealth Ct. 484, 322 A.2d 731 (1974). The party prevailing below is to be given the benefit of any inferences which can reasonably be drawn from the evidence. *Dingel, supra; Shira v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 457, 310 A.2d 708 (1973). We also note as relevant the following passage from *Dingel:*

> "It is clear, of course, that the initial burden of proving a right to unemployment compensation rests with the claimant. *Kanouse v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 188, 305 A.2d 782 (1973). The claimant here argues that she has established such a prima facie case of availability by registering for work and declaring her availability for full time work, and she cites *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A.2d 898 (1946). The presumption of availability, however, is rebuttable, and the question thus becomes whether or not the Board could

have reasonably drawn an inference from the surrounding circumstances to rebut it in this case." 14 Pa. Commonwealth Ct. at 487-88, 322 A.2d at 733.

Shrump raises four issues. She first argues that the Board should not be permitted to rely upon her failure to produce medical evidence of her ability to work during the period immediately following her discharge (which encompasses the weeks of eligibility which are in issue). Shrump's failure to produce her doctor is certainly understandable, since the doctor suffered a totally disabling stroke during the two years which elapsed between the first hearing and the last. It is true that the Board's adjudication mentions the lack of medical evidence, but the adjudication goes on to mention Shrump's own testimony of August 29, 1972, in which she stated that she was, at that time, still suffering from the same disability which precipitated her discharge. Even discounting the weight which may have been given to the lack of medical testimony, the record contains sufficient evidence to support the Board's findings.

We thus also dispose of Shrump's second contention, *i.e.*, that the finding of nonavailability due to illness is not supported by substantial evidence. The question of availability is largely one of fact, and, as noted above, we must give the employer the benefit of all reasonable inferences. *Graham v. Unemployment Compensation Board of Review*, 14 Pa. Commonwealth Ct. 445, 322 A.2d 807 (1974). Shrump's own unequivocal statement that (as of August 29, 1972) she was still suffering disabling cramps is clearly sufficient to support a finding that she was not able to work.

Shrump maintains that she was denied due process of law because (1) the question of availability was not explicitly raised until the Board rendered its first adjudication and (2) the Board caused unnecessary delays in the first appeal to this Court. Shrump argues that the delay between the first hearing and the final hearing is

the direct result of these two alleged facts, and that the stroke suffered by her physician during the intervening period demonstrates the prejudice thus done to her case. We are sympathetic to the plight of individuals who must sometimes wait a considerable length of time before their rights are finally determined; but we also recognize that there is a certain amount of delay inherent in the system which has been established to determine those rights. In cases where, for one reason or another, a remand is justified, this delay is necessarily increased.

In the long run, however, the objective of fairness is better served by allowing parties to proceed through several stages of review. In the instant case, for example, our remand order of July 17, 1974 served the purpose of providing Shrump with the opportunity to offer the evidence on availability which she claimed she had no opportunity to offer at the first hearing. Thus, at least part of the delay was motivated by a sensitivity to Shrump's rights and was occasioned by Shrump's appeal.

Shrump complains specifically about delays in the first appeal to this Court caused by the Board's tardiness in filing its brief and in lodging the record with the prothonotary. With respect to the brief, we see no real prejudice. The delay in lodging the record, however, presents a more difficult problem. Shrump alleges that her first appeal to this Court was perfected on May 31, 1973, but that the record was not forwarded to the Prothonotary until January 2, 1974, in violation of Section 510 of the Act, *as amended*, 43 P.S. §830. This delay, Shrump argues, is the responsibility of the Board and is causally linked to her inability to present the best medical evidence on the question of availability. We severely disapprove of any failure by the Board to meet its responsibility to promptly provide the materials necessary for this Court to discharge its duties, but we also realize that the employer in this case bears none of the Board's

responsibility, and yet the employer's rights are also affected by our decision.

The record discloses that Shrump's counsel sent a member of his staff to the home of Shrump's treating physician to ascertain the state of the physician's health. At this meeting the physician signed an affidavit, prepared by the staff member, that she (the physician) was unable to appear in court and that "[i]nformation concerning the case . . . is unavailable at this time." The staff member testified that the physician stated she was unable "to testify or produce her records." The account of the meeting went on to describe the doctor's statement that she was unable to read her records, indicating that, while some notations concerning Shrump's condition may have existed, the doctor was unable to read them. Interestingly, the physician is also reported as saying that she could only "vaguely" recall Shrump's condition during the weeks at issue, and that she could not recall "specifics" and could not "give any specific details."

The description of the physician's health indicates that, despite her problems, she had no difficulty in *speaking* during the interview and there is no indication in the record that a deposition could not have been taken by Shrump's counsel. We do not consider that a denial of due process follows from the physician's inability to remember details, even after an unjustified delay, for lapses of memory are a problem which all litigants must contend with, and, in cases of medical testimony, the preservation of evidence is served by the medical profession's customary practice of keeping written records. The means to compel the production of such records was at all times available to Shrump. *See* Section 506 of the Act, 43 P.S. §826 and 34 Pa. Code §101.31. If Shrump's disadvantage was caused by her physician's failure to keep records, this risk is properly placed on Shrump, and not on the employer.

Shrump's final contention is that due process was denied because she was not notified of a referee's hearing

held on December 5, 1972. This hearing was prior to the first appeal to this Court and was the result of a remand order issued by the Board prior to the decision in which the Board first raised the question of availability. The record indicates that this hearing was indeed conducted *ex parte,* but it is also clear that all of the evidence offered was relevant to the question of willful misconduct and could not have any bearing on the merits of the decision presently on appeal to us.

One additional point merits comment. Throughout the final hearing Shrump maintained that she was, and is, in good health. The Board's adjudication, though unfavorable to Shrump, properly suggests that if Shrump can at any time present to the Bureau of Employment Security satisfactory medical evidence that she is *presently* able to work, she will be entitled to receive benefits. We agree with this suggestion.

In light of the above opinion, we

ORDER

AND NOW, this 29th day of December, 1975, the order of the Unemployment Compensation Board of Review dated February 28, 1975 in the above-captioned matter, denying benefits to Patricia Shrump, is affirmed.